No. 33,132

FRANCES CORNNER, *Appellant*, v. CHARLES KLOEHR, JOSEPH V. KLOEHR (KATE KLOEHR, JESSIE K. BERTELL, *Appellants*), OLLIE MAYME KLOEHR, SAM BROWN KLOEHR and J. B. KLOEHR, a Minor, *Appellees.*

(61 P. 2d 1346)

Opinion filed November 7, 1936.

*Chester Stevens* and *W. D. Kimble,* both of Independence, for the appellant.

*Dallas W. Knapp* and *Charles D. Welch,* both of Coffeyville, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action was for an accounting of a partnership business. The trial court made findings of fact and rendered judgment in harmony therewith. The plaintiff and two defendants have appealed, and complain that they did not have a fair trial, that there is no competent, substantial evidence to support some of the material findings and the judgment based thereon, and that the court erred in its rulings on the admission and exclusion of evidence, in holding the real property in controversy to be a part of the assets of the partnership, and in finding appellants to be indebted to the partnership in specific sums.

In the early '70's Joseph Kloehr came from Germany to Coffeyville and opened a livery-stable business, which he conducted successfully until his death in 1903. By his will all his property passed to his widow, who, with her sons, continued to operate the business, which gradually changed into a garage and oil station business, until her death, intestate, in 1924. She left as her heirs five children— three sons, John J., Charles, and Joseph V., and two daughters, Mary and Frances. In addition to the garage her estate consisted of several business houses in Coffeyville, and farm land. Her estate was not administered upon. The five adult children agreed among themselves upon a division of the property, which was accomplished by an exchange of deeds. In this division each of them took, as individual owner, a business, house or a farm; and the three boys, John, Charley and Joe, bought the interest of their two sisters, Mary and Frances, in the garage property and business. Thereafter, and until the death of John in 1927, the three brothers conducted the garage business as partners, under the firm name of Kloehr Brothers, and to the garage they gave the name, "The Southern Garage." There appears to have been no written partnership agreement, but each owned an undivided one third of the business and in the real and personal property used in conducting the business; each devoted his entire time to the business, and each was entitled to one third of the profits and liable for one third of the losses of the business. Apparently the partners were industrious, fair-minded men; each had full confidence in the integrity of the

others. This action does not involve an accounting of the partnership just described; what is stated here is simply historical background for the present action.

John J. Kloehr died intestate March 20, 1927, leaving as his heirs his widow, Kate Kloehr; his daughter, Jessie K. Bertell, both of whom were defendants in this action and are appellants here; his daughter, then Frances Brown, now Frances Cornner, plaintiff in this action and appellant here; and a son, Russell J. Kloehr, all of whom were adults. Soon thereafter the heirs of John J. Kloehr, and Charles and Joseph V. Kloehr, entered into an oral agreement by which a new partnership was formed for the continuation of the garage business. There is some conflict in the evidence as to just what that agreement was. The trial court found the agreement was that the partnership should continue the garage business as it had been conducted, that the heirs of John J. Kloehr should retain the interest which passed to them by his death, and that Ben Brown, then the husband of Frances Brown, should take the place of John J. Kloehr in the partnership as the representative of the heirs of John J. Kloehr, and that Ben Brown, Charles Kloehr and Joseph V. Kloehr should manage and conduct the partnership business and that each should receive a salary of $150 per month. Ben Brown did go into the business and continued there about three months, when he quit and Russell J. Kloehr took his place, and continued until his death, July 30, 1933. During this time, from the latter part of March, 1927, until the last of July, 1933, the business was conducted much as it had been previously. Charley and Joseph V. Kloehr, and Ben Brown for a few months, and Russell J. Kloehr for the remainder of the time, devoted all their time to the work and management of the business. Their personal relations appear to have been harmonious. However, it appears the business did not prosper in those years, partly for the reason that numerous other garages and oil stations had been put in near by, and their business had dwindled. Russell J. Kloehr died intestate, leaving as his heirs his widow, Ollie Mayme Kloehr, and two children, all of whom were defendants in the trial court, and are appellees here. After his death Charles and Joseph V. Kloehr continued the garage business, without anyone representing the heirs of John J. Kloehr participating actively therein.

This action involves an accounting of the business since the death of John J. Kloehr in March, 1927. The petition was filed February

26, 1934. Promptly, on plaintiff's application, a receiver was appointed, who took charge and operated the business until November 2, 1934, when, by stipulation of the parties, the personal property used in the business, and an outlying lot, were sold by order of the court. The real estate on which the principal business was conducted has not been disposed of.

On the trial there was a controversy as to the capacity in which Ben Brown and Russell J. Kloehr went into the business. Appellants contended they simply worked there as employees, while appellees contended they went into the business as representatives of the heirs of John J. Kloehr and assisted in the management and conduct of the business as John had done previously. On conflicting evidence the court found as contended by appellees. The finding is supported by competent, substantial evidence.

There was also a controversy at the trial as to whether the real property in which the garage business was conducted was a part of the assets of the partnership. The evidence disclosed the partnership never paid rent to the individual owners for the use of the property; that the building had two stories, the first floor being used for the garage and filling station; the second floor was rented out to tenants, and that the rents so received were always treated as partnership income; that the taxes, insurance and repair of the property, including a remodeling of the building at a cost of more than $4,600, were paid from partnership moneys; that in making the partnership income report to the federal government the rents received from the second floor were reported as partnership income, and the taxes, insurance, repairs and depreciation on the building were reported as partnership expenditures and credits. In addition to that there was oral testimony that the parties intended the property to be a part of the partnership assets. It was not error for the court to find this real estate was partnership assets.

Appellants complain of the manner in which the trial was conducted, and especially of the proof of receipts and disbursements of the partnership business and the findings and judgment predicated thereon. The evidence disclosed that while some record was made of all business transactions, what we may call a modern bookkeeping system was not used; also, that many individual transactions of the respective partners were handled through the partnership account. Instead of the partnership paying to each of the partners $150 per month, or any definite sum, which he would put in his in-

dividual account in the bank and out of which he would pay the living expenses of his family and his other personal obligations, all of that was handled through the partnership account in a somewhat informal way. If one of them wanted a few dollars for his personal needs, and the money was on hand, he would take the amount from the cash drawer and put therein a slip of paper on which he had written a memorandum of the amount he had taken and the purpose for which it was taken. If the amount he desired were larger, or for any reason he preferred to do it, he would draw a check on the partnership account in the bank for the amount and mark on both the stub of the check and the check itself the fact that he had drawn it, and the purpose for which it was drawn. Their bills to the grocer and other merchants, and taxes, or other items of expense, on property owned individually, were handled in the same way; also the receipts and disbursements of conducting a farm were so handled, although it was not partnership business. These memoranda of amounts taken from the cash drawer, canceled checks and stubs, and other evidences of money drawn or used individually were all preserved in some form. The partnership, of course, purchased oils, gas, and other merchandise, and sold in part on credit. Books or other records were kept of all these transactions.

Sometime in the fall of 1933 Charles and Joseph V. Kloehr employed a competent accountant to audit the accounts of the partnership and make a report thereon. He went through all these books and records, classified all of the items of expenditures, as to whether they pertained to the partnership business or to the individual partners, and made a written report to them in November, 1933. A copy of this report was furnished to the husband of plaintiff, who was active in the controversy on her behalf, and also to a young man who was, or had been, in the office of the attorney for plaintiff. This report, among other things, showed the amount the accountant found to have been paid for the partnership, or for the use and benefit of the individual partners, respectively, by years, from the time of the death of John J. Kloehr in 1927 to September 1, 1933, but the details making up the respective sums found to have been so paid were not set out. After this action was filed in February, 1934, and a receiver was appointed, the accountant made a supplemental audit of the business covering the time from September 1, 1933, to the date of the appointment of the receiver. All the books and records of the business used by the accountant in making his audit, were

turned over to the receiver and remained in his possession until the trial of this action in July, 1935. During all this time they were available for examination by appellants and their counsel, and were examined, to some extent at least, by them, or someone in their behalf. On the trial of the action appellants took the position that under the circumstances it was the duty of Charles and Joseph V. Kloehr to prepare and furnish them with a full and complete account, under oath, of all of the partnership business since March, 1927. They contended the report of the accountant was not such a complete account. They introduced the accountant's first report in evidence for the purpose only of showing the form of it. Apparently the trial court regarded it as in evidence for all purposes for which it might be received. Counsel for appellants was invited to point out any errors or inaccuracies therein. The record shows much colloquy between court and counsel, details of which need not be stated. The accountant was questioned by counsel on both sides as to the manner in which he compiled the report and the sources from which he obtained the information summarized therein. He testified Charles and Joseph V. Kloehr had turned over to him the books and records of the business, that they appeared to be complete, that he had checked them with the bank account and all other available sources, and explained how he had made his work sheets and compiled his report. All of these books and records were in court. Those showing payments out of the partnership business had been classified as to whether they had been paid on accounts owed by the partnership, or for the respective individual partners, for taxes, grocery bills, and other purposes, also those pertaining to the farm account, and they were all introduced in evidence. Counsel for appellants examined the accountant to some extent with reference to the items making up the summaries made on his report, and was tendered by the court much longer time than he consumed for that purpose. He contended he could not make the inquiries he desired without a full detailed account of receipts and disbursements made under oath by Charles and Joseph V. Kloehr. Under the circumstances the court declined to require that to be done. Appellants contend the court erred in this ruling, that the accountant's report was improperly received in evidence, and that it is insufficient to form the basis of the findings and judgment of the court.

From a legal point of view we had the identical question before

us in *Clark v. Moffett*, 136 Kan. 711, 18 P. 2d 555. That involved an accounting of a partnership business, which had been conducted for more than thirty years and had transacted a large amount of business, in which the individual business of the partners, and also that of other partnerships, of which one or more of them were members, had all been kept for years in one set of books. An accountant had been employed by one of the parties to the action to audit these books and make a report of the business of the principal partnership, of the indebtedness to it of the individual members, if any, and of the separate partnerships in which they were interested. The accountant's report, when offered in evidence, was objected to as being incompetent and hearsay, and it was further contended that without it there was no competent evidence to sustain the findings of the trial court. The court admitted the accountant's report in evidence as informative, but not conclusive. The voluminous books and records from which the accountant had made his report were in court. The trial court offered to give the parties objecting to the accountant's report such opportunity as they needed to inquire as to the accuracy of the report, and upon their failure to show its inaccuracy used it as a basis of its findings and judgment. That procedure was approved on appeal. This court held:

"It was not error for the court to receive in evidence, as informative but not conclusive, a summary made by accountants from the partnership books." (Syl.)

It was also held that the evidence supported the findings and judgment of the court.

What was done here differs only in detail from what was done and approved in *Clark v. Moffett*, supra. We think no error was committed by the court in this respect.

The evidence disclosed that when John J. Kloehr died in 1927, and the new partnership was formed, it had to its credit in its account at the bank more than $9,000. The accountant's report of the business up to September 1, 1933, made no mention of that item. Appellants complain of that and say it was omitted. But that is inaccurate. The accountant was interrogated as to that item and testified that he was familiar with it at the time he made his report, and stated the reason it was not shown in his report was that he began his accounting as of the date of September 1, 1933, and worked back to the beginning of the partnership in 1927; that he did this for the reason that, from an appraisal of the property and an examination .

of the accounts of the business, he could strike a trial balance as of the date of September 1, 1933, more easily than he could as of the date of March, 1927, when no inventory had been taken. He further testified it was a common practice of accountants to make an audit of the business in that way, and that his report, as compiled, showed the use of moneys on hand to the credit of the partnership at its beginning in 1927, as well as of income and of money borrowed during the conduct of the partnership business. There is no showing that this method of auditing the business is inaccurate, or that any prejudice resulted to appellants, or any of the other parties to the action, by the method used.

Other matters discussed in the briefs need not be specially treated. The judgment of the trial court is affirmed.